[No. 8420.   Department One.   February 21, 1910.]

## Pat H. Roundtree *et al.*, *Respondents*, v. John Hutchinson, *Appellant.*[1]

DEDICATION—IMPLIED AT COMMON LAW—CEMETERIES.   There is an implied irrevocable common law dedication of a tract of land to a public use, where it appears that the tract was, with the owner's consent, used by the entire neighborhood for a burying ground from 1854 to 1884, no grant or particular ceremony being necessary.

CEMETERIES—ABANDONMENT—DEDICATION.   A burial ground is not abandoned from the fact that no new interments were made for several years, where the dead interred are not exhumed and removed by those having authority to do so.

CEMETERIES—DESECRATION—ACTIONS—PARTIES—INJUNCTION.   The relatives of the dead interred in a burial ground, who sue on behalf of themselves and all others of the precinct, may maintain an action to enjoin the desecration of a burial ground impliedly dedicated to the public for use as such.

Appeal from a judgment of the superior court for Lewis county, Rice, J., entered May 21, 1909, upon findings in favor of the plaintiffs, in an action for an injunction. Affirmed.

*Reynolds & Stewart*, for appellant.

*W. W. Langhorne*, for respondents.

Gose, J.—This is a bill in equity to restrain the defendant from desecrating a burial ground, and to establish the right to ingress and egress.   There was a decree for the plaintiffs, and the defendant has appealed.

The case presented by the record is, was the tract of land dedicated to the public by the owner as a place of sepulture. The trial court found as a fact that "the declarations of consent and the conduct of Buchanan, acted upon and relied upon by the residents of Boistfort precinct from 1855 to the time of his sale to Wooley in 1884, was in fact an im-

[1]Reported in 107 Pac. 345.

plied dedication of this burying ground." Whilst the finding may more properly be termed a conclusion of law, we cannot escape the conviction that the learned trial court correctly resolved the case upon questions of both law and fact.

The case developed the following facts: One Buchanan and his wife settled upon a donation claim, of which the burial ground formed a part, in 1853, and later acquired title. They continued in the possession of the land until 1884, when they conveyed to Wooley, who conveyed to the appellant in 1887. The tract in controversy was used by the entire neighborhood as a place for the interment of the bodies of the dead, with the consent of the Buchanans, from 1854 until they conveyed to Wooley in 1884. There is some evidence that they became somewhat obdurate about the year 1874, but they continued however to consent to the use of the tract as a burial ground. About forty bodies were buried there during this period. Some time after the appellant acquired title, he forbade the use of the ground for other interments, but offered no opposition to its retention as a resting place for the bodies already buried. However, in 1908, according to his testimony, the fences inclosing the graves having fallen, he removed and burned the fencing material, removed the tombstones, and plowed and seeded the ground. The decree recites, and it is supported by the evidence, that the appellant desecrated the graves and denied access to the cemetery to relatives and friends of those who were buried there, that he wrongfully removed the monuments erected to perpetuate the memory of the dead, and that he wrongfully plowed over the graves.

The recited facts show an implied common law dedication to a public use. The distinction between a statutory dedication and a common law dedication is that the former proceeds from a grant, whilst the latter operates by way of an estoppel *in pais*. There is no particular form or ceremony necessary in the dedication of land to a public use. An im-

plied common law dedication arises from some act or course of conduct from which the law will imply an intention on the part of the owner of the property to dedicate it to the public use. Elliott, Roads & Streets (2d ed.), §§ 121, 123; *Cincinnati v. White*, 6 Pet. 431.

"An implied dedication is one arising, by operation of law, from the acts of the owner. It may exist without any express grant, and need not be evidenced by any writing, nor, indeed, by any form of words, oral or written. It is not founded on a grant, nor does it necessarily presuppose one, but it is founded on the doctrine of equitable estoppel. As said by the supreme court of the United States, 'the law considers it in the nature of an estoppel *in pais*,' and holds it irrevocable. It may be established by evidence of conduct, and in many ways. In one case it was declared that: 'The authorities show that the dedications have been established in every conceivable way by which the intention of the party could be manifested.' If the donor's acts are such as indicated an intention to appropriate the land to the public use, then, upon acceptance by the public, the dedication becomes complete." Elliott, Roads & Streets, § 123.

The use by the public need not continue for the statutory period.

"Such use, however, ought to be for such a length of time that the public accommodation and private rights might be materially affected by an interruption of the enjoyment." *Cincinnati v. White, supra.*

The intention of the owner to dedicate, and the period of enjoyment for the creation of a public right, depend somewhat upon the nature of the use to which the property is devoted. When the owner has, as in this case, consented to the use of a particular tract of land for a place for the interment of the dead for so great a length of time, an intention to dedicate the land to the public for such purpose will be conclusively presumed, and neither he nor those claiming title through him with notice of the use will be heard to assert the absence of an intention to devote the land to the particular use.

In *Ball v. Tacoma*, 9 Wash. 592, 38 Pac. 133, the owner of a small tract of unplatted land lying between two avenues seven hundred feet apart, in such a position that the extension of Carr street southward to the avenue would include forty-three feet of the west end of his property, joined with owners of similar tracts in a petition to the city council, asking that land one hundred feet in width between the two avenues, which would be an extension of Carr street, be improved at the expense of the owners of property fronting upon it, the improvements to consist of grading and building sidewalks. The petition was granted and the improvement made. He thereafter sought to recover for the land taken and for damages to the remainder of the tract. Upon the facts stated, it was held that there was an implied dedication of the land to the public. In *Seattle v. Hill*, 23 Wash. 92, 62 Pac. 446, this court ruled, that a dedication in accordance with the rules of the common law is valid in this state; that the statute of frauds is not applicable in such cases; that an intention on the part of the owner to dedicate to a public use, followed by some act or acts clearly evincing such intention and an acceptance by the public, constitute a valid common law dedication. In *Forney v. Calhoun County*, 84 Ala. 215, 4 South. 153, in discussing the facts as tending to show an implied dedication of a tract of land as a courthouse site, the court said:

"The doctrine of equitable estoppel applies with peculiar force to cases of this kind. Where the owner of land intentionally, or by culpable negligence, leads the public to believe that he has dedicated it to a public use, he will, upon every principle of fair and conscientious dealing, be estopped from denying the fact of such dedication, to the prejudice of those whom he has thus misled."

In *Bessemer Land & Imp. Co. v. Jenkins*, 111 Ala. 135, 18 South. 565, 56 Am. St. 26, the court, considering the precise question presented here, said:

"But the proofs referred to above do tend to show a dedication; that the dead of the community, including plaintiff's

child, were buried in the cemetery with the knowledge, consent, and license of defendant, and that the plaintiff, and the public generally, were encouraged to bury their dead there. If this was true, the defendant would be estopped to deny plaintiff's rights to and possession of the spot of land for the purposes used, and it could not, therefore, any more than a stranger, unlawfully interfere with or desecrate it."

The same rule was recognized and applied in *Davidson v. Reed*, 111 Ill. 167, 53 Am. Rep. 613, and in *Tracy v. Bittle*, 213 Mo. 302, 112 S. W. 45, where the authorities are collated.

It is true that there are no reservations in the deeds in the appellant's chain of title, but both he and his grantor Wooley had notice of the existence of the burying ground, and purchased subject to the rights the public had acquired in the property. The appellant cites *Shell v. Poulson*, 23 Wash. 535, 63 Pac. 204; *Megrath v. Nickerson*, 24 Wash. 235, 64 Pac. 163; *Columbia & Puget Sound R. Co. v. Seattle*, 33 Wash. 513, 74 Pac. 670, and *Petterson v. Waske*, 45 Wash. 307, 88 Pac. 206, and argues from them that the land was not dedicated to the public for burial purposes. The first three cases recognize the rule we have announced, that an implied dedication depends upon the intention of the owner of the property to be gathered from the attendant facts and circumstances. The *Petterson* case is so variant upon the facts as to make it inapplicable. The discussion in some of the cases confuses a right or title acquired by dedication with that arising from an adverse possession. The former gets its existence from the consent of the owner, either actual or implied, whilst the latter arises from the assertion of title in hostility to that of the record owner.

*Hathaway v. Yakima Water L. & P. Co.*, 14 Wash. 469, 44 Pac. 896, 53 Am. St. 847, and kindred cases from this court, are cited, and the argument is made that, applying the principles which they declare, the case at bar presents simply an oral license terminable at the pleasure of the licensor. These cases announce the rule that a verbal license

for an easement, such as a water ditch, is revocable at the pleasure of the owner of the land affected by the license. They have no application to this case. A parol license to a private individual to exercise some right or privilege in real property, and an implied dedication of the land to some public use where there has been an acceptance and user by the public, rest upon different and entirely distinct principles of law.

There has been no abandonment of the graveyard. Many of the bodies have not been removed. It will only lose its character as a resting place for the dead when those now interred are exhumed and removed by those having authority to remove them. It is true that for some years no new interments have been made, but it is still a place of sepulture. The appellant cannot profit from the fact that the graves have not been properly cared for, as the failure so to do is partially if not wholly due to his own perversity. *Tracy v. Bittle, supra.* Sacred memories cluster around this burial spot, unkept as it is, and its desecration shocks the moral sense of mankind and brings just reproach upon the author.

The respondents have relatives buried there and have brought this suit on behalf of themselves and all others of Boistfort precinct, which includes the burial ground. Equity will therefore afford them injunctive relief. *Tracy v. Bittle, supra.*

The decree will be affirmed.

RUDKIN, C. J., CHADWICK, FULLERTON, and MORRIS, JJ., concur.